UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
WALTER CARABALLO,                                :     05 CV 2416 (ARR)
                                                 :
                              Plaintiff,         :     NOT FOR PRINT OR
                                                 :     ELECTRONIC
          -against-                              :     PUBLICATION
                                                 :
JO ANNE B. BARNHART,                             :     OPINION AND ORDER
Commissioner of Social Security,                 :
                                                 :
                              Defendant.         :
------------------------------------------------------------------ X
ROSS, United States District Judge:

Plaintiff Walter Caraballo, proceeding pro se, brought this action pursuant to 42 U.S.C. §§ 405(g) to review the final decision of the Commissioner of the Social Security Administration ("SSA"), dated April 13, 2005, denying him Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., during the period of September 30, 1976 to September 4, 1991. Plaintiff initiated this action by complaint filed on May 19, 2005. Defendant has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, the court denies defendant's motion for judgment on the pleadings, reverses the Commissioner's decision, and remands the case for further proceedings.

## BACKGROUND

### A. Procedural History

Plaintiff applied for SSI benefits on September 30, 1976, (R. 47)[1], alleging disability due to joint pain. (R. 12.) Plaintiff's application was denied based on a finding that he lacked a

---

[1] "R." refers to the administrative record filed with the court by defendant Commissioner.

1

severe impairment as required by the second step of the five-step sequential evaluation process under 20 C.F.R. § 404.1520. (Id.) Plaintiff filed a subsequent application on May 28, 1981, (R. 48), which was also denied under the second step of the regulations. (R. 12.) In addition, plaintiff filed subsequent applications on October 21, 1985 and January 8, 1988, both of which were denied. (R. 48-49.) Plaintiff's fifth application for SSI benefits was granted as of the date the application was filed, which was September 4, 1991.[2] (R. 49.)

Plaintiff's applications dated September 30, 1976 and May 28, 1981 were reopened pursuant to the Remedial Order in Dixon v. Sullivan, 792 F. Supp. 941 (S.D.N.Y. 1992), aff'd, 54 F.3d 1019 (2d Cir. 1995). Under the class action relief granted in Dixon, plaintiff was entitled to have his 1976 and 1981 applications reopened and readjudicated because his claims were denied at the second step of the five-step sequential evaluation during the class period of June 1, 1976 to July 19, 1983. See 54 F.3d at 1028. In addition to his Dixon claims, plaintiff's applications dated October 21, 1985 and January 8, 1988 were re-opened pursuant to the settlement agreement in Stieberger v. Sullivan, 792 F. Supp. 1376, modified, 801 F. Supp. 1079 (S.D.N.Y. 1992). Under Stieberger, plaintiff was entitled to have his 1985 and 1988 applications reopened and readjudicated due to the Commissioner's nonacquiescence policy, which resulted in administrative policies that were inconsistent with decisions set forth by the Court of Appeals for the Second Circuit. See id.

On June 11, 2001, the Commissioner affirmed the denials of plaintiff's reopened applications. (R. 98, 100.) Specifically, plaintiff's reopened applications were denied because

---

[2] SSI benefits are not payable for any month before the month in which the application is filed. See 20 C.F.R. § 416.335. Thus, at issue here, is plaintiff's eligibility for SSI benefits prior to September 4, 1991.

2

there was apparently insufficient medical evidence to establish the severity of plaintiff's complaints of arthritis, back and hand problems, diabetes, and a stomach condition. (R. 99, 101.) Plaintiff requested a hearing before an ALJ, (R. 102), but he waived his appearance at the hearing, (R. 226-27). By decision dated November 27, 2002, ALJ Lucian Vecchio found that plaintiff was not disabled and had the capacity to perform a full range of light work during the period covered by the reopened applications, September 30, 1976 through September 3, 1991. (R. 16-17.) The Appeals Council denied plaintiff's request for review on April 13, 2005, making the ALJ's November 27, 2002 decision the final decision of the Commissioner. (R. 5-7.)

The instant action was timely commenced on May 19, 2005. On December 19, 2005, the Commissioner moved for judgment on the pleadings and to date plaintiff has not submitted opposition papers nor sought an extension of time to do so. Given that plaintiff is proceeding pro se, the court will review the record and determine whether to grant the Commissioner's motion. See Hufana v. Apfel, No. 99 Civ. 3345, 2000 WL 1210826, at *1 n.1 (E.D.N.Y. Aug 18, 2000); Cortez v. Apfel, No. 96 Civ. 7214, 1998 WL 601005, at *1 n.2 (S.D.N.Y. Sep 10, 1998).

**B.   Evidence Before the ALJ**

**1.   Non-Medical Evidence**

Plaintiff was born in Puerto Rico on February 24, 1944. (R. 18.) Plaintiff has a sixth grade education and does not write or speak English. (R. 33, 267.) Plaintiff worked as a cook in a small Spanish restaurant from 1970 to 1976, but has not worked since 1976. (See R. 265.)

Plaintiff alleges disability due to physical problems dating back to 1976. (R. 261.) In his 1985 application, plaintiff stated that he suffers from arthritis of his back, legs, and arms. He further stated that he has trouble walking, has severe back pain that prevents him from sitting or

standing for long periods of time, and has pain in his wrists, legs, and back when it is damp or rainy outside. (Id.) In his 1988 application, plaintiff also stated that he injured both his right and left arms and continues to suffer from arthritis. (R. 261.) At a hearing related to his 1988 application, plaintiff apparently testified that he suffers from stomach pain and rectal bleeding, in addition to his arthritic pain.[3] (R. 322.)

In his 1985 application, plaintiff stated that his wife does the household chores and that his activities mainly consist of watching television and visiting with friends. (R. 32.) He also stated that he uses public transportation. (Id.) In his 1988 application, plaintiff explained that his wife does all the housework because he is unable to pick up objects. (R. 264.) He also stated that his activities consist of watching television and visiting with friends. (Id.) In a supplement to his 1988 application dated April 29, 1988, plaintiff claimed that his wife has to get him out of bed in the morning and help him get dressed due to his arthritis. (R. 271.) At the April 20, 1989 hearing, plaintiff apparently testified that he traveled to the hearing by taxi and cannot use public transportation alone. (R. 322.) He also apparently testified that he spends his time going to ballgames, watching television, sitting outside, and listening to the radio. (Id.)

2.  **Medical Evidence**

*a)  Treating Physicians*

---

[3] The transcript of the April 20, 1989 hearing is among the many documents missing from the administrative record in this case. However, the decision denying plaintiff's 1988 application for SSI benefits summarizes some of plaintiff's testimony at the hearing and is part of the administrative record. (See R. 322.) Thus, any reference to the April 20, 1989 hearing relies on the summary of plaintiff's testimony in the decision denying his 1988 application.

The earliest record of plaintiff's medical treatment during the relevant time period relates to treatment sought from St. Mary's Hospital on March 12, 1987.[4] An undated document reports that plaintiff had a history of alcohol abuse and that plaintiff had a general physical exam and laboratory work-up on March 12, 1987 and was diagnosed with arthritis. (See R. 167.) On April 28, 1988, Dr. Ida Villa Pastor, a physician at St. Mary's Hospital, stated that laboratory tests completed on March 12, 1987 showed an elevated sedimentation rate and positive rheumatoid arthritis (RA) latex factor. (R. 286-88.) Dr. Villa Pastor further stated that plaintiff continued to be symptomatic with treatment and was referred to a specialist for further evaluation. (R. 286.)

On June 8, 1988, plaintiff complained of pain his joints and problems with his bowel movements. (R. 294.) A rheumatoid arthritis evaluation was ordered and plaintiff was prescribed Dolobid, Prednisone, Mylanta, and Pepcid. (R. 294-95.) On June 23, 1988, plaintiff complained of continued pain in his knee and his back. (R. 295.) Upon examination, his back was found to be tender and an orthopedic evaluation was ordered. (Id.) On July 27, 1988, plaintiff was diagnosed with rheumatoid arthritis symptoms and epigastric pain. (R. 296.) On August 31, 1988, plaintiff complained of diarrhea and severe back pain. (R. 297.) Upon examination, his abdomen was found to be soft and depressed and no edema of the extremities was found. (Id.) The doctor referred plaintiff to the pain management clinic and ordered blood work to be done, including CBC, sedimentation rate, and RA latex factor tests. (Id.) Plaintiff's RA factor was 1:20 dl. (R. 314.)

---

[4] The SSA could not find the records associated with plaintiff's 1976 and 1981 applications. (See R. 79.) As discussed in further detail below, the Dixon Remedial Order sets forth a procedure for determining whether disability should be presumed and whether reconstruction of the file for the period at issue is required. See 54 F.3d at 1034-35.

On September 18, 1988, plaintiff continued to report joint and abdomen pain. (R. 298.) Upon examination, his abdomen was found to be soft and no edema of his extremities was found. (Id.) On October 20, 1988, plaintiff reported pain in his legs and hips. (R. 299.) Upon examination, his abdomen was found to be soft and no edema of his extremities was found. (Id.) He was started on a course of Prednisone. (Id.) Plaintiff was also examined on November 4, 1988 and similar findings were made. (R. 299-300.) On November 11, 1988, plaintiff's stool samples were reported to be negative. (R. 315.) On November 18, 1988, plaintiff reported improvement in his joints, but noted that he continued to experience abdominal discomfort. (R. 300.)

On December 20, 1988, plaintiff complained of joint pain and rectal bleeding. (R. 301.) Upon examination, no masses or inflammation were discovered, but there was blood present. (Id.) Plaintiff was diagnosed with arthritis symptoms, abdominal pain, and rectal bleeding. (R. 302.) On January 3, 1989, plaintiff complained of epigastric pain, diarrhea, and vomiting. (R. 302.) Upon examination, plaintiff's abdomen was found to be tender. (Id.) The doctor concluded that plaintiff's arthritis was stable and that plaintiff suffered from rectal bleeding and acute gastritis. (R. 302-03.) On February 6, 1989, plaintiff reported back pain and continued rectal bleeding. Upon examination, plaintiff's abdomen was found to be soft and he was diagnosed with arthritis symptoms and rectal bleeding. (R. 303.) On February 22, 1989, plaintiff was examined for neck pain, in addition to arthritis and rectal bleeding. (R. 304.) Upon examination, plaintiff's abdomen was found to be soft and no edema of the extremities was found. (Id.) The doctor prescribed Feldene, Tylenol, and Flexeril. (Id.)

On February 22, 1989, Dr. Villa Pastor completed a medical evaluation of plaintiff, in which she stated that she had diagnosed plaintiff with arthritis, rectal bleeding, and hypertrophic gastritis and was treating plaintiff on a monthly basis. (R. 289.) She also stated plaintiff had elevated sedimentation rates in laboratory tests conducted in March 1987, December 1987, and August 1988 and had an RA latex factor of 120 dl. (R. 290.) In addition to the laboratory results, Dr. Villa Pastor found that plaintiff had tenderness in his back and his lower extremities. (Id.) She also observed rectal bleeding, although she found no masses after conducting an exam of the area. (Id.) She further noted that she had prescribed several medications for plaintiff's arthritis, including Neprosyn, Prednisone, and Feldene. (Id.) She had also prescribed Pepcid for plaintiff's gastrointestinal problems. (Id.)

In the February 1989 evaluation, Dr. Villa Pastor also conducted an Residual Functional Capacity ("RFC") assessment of plaintiff. She concluded that plaintiff could only sit for 2 1/2 hours, stand for 1 hour, and walk for 1/2 hour during an 8 hour work day. (R. 291) For the remaining 4 hours, Dr. Villa Pastor opined that plaintiff would have to lie down. (Id.) In addition, she noted that plaintiff could carry up to 5 pounds frequently and 6 to 10 pounds occasionally, but could never carry more weight. (Id.) She also opined that plaintiff could manipulate his hands and arms, but sometimes his pain prevented him from moving them. (Id.) Dr. Villa Pastor further opined that plaintiff could not use his feet to push and pull leg controls and that he could never bend, squat, crawl, climb, or reach. (R. 291-92.)

On March 21, 1989 and April 24, 1989, plaintiff was again treated for back pain and rectal bleeding. (R. 305-06.) The doctor continued to prescribe Feldene and Flexeril. (Id.) On May 22, 1989, plaintiff complained of severe back pain and pain in his joints. (R. 307.) Upon

examination, plaintiff's back was found to be tender on both sides of the lumbar area and the lower thoracic region. (Id.) The doctor prescribed Naprosyn, Cytotec, and Flexeril. (Id.)

*b) Consulting Physicians*

On December 19, 1985, Dr. Mario Mancheno, a consulting physician, examined plaintiff. (R. 136.) Plaintiff reported a history of lower back pain and pain in his knees. (Id.) Dr. Mancheno found that plaintiff was "well-developed and well-nourished, walks normally, has no difficulty getting onto and lying down on the examination table." (Id.) He also found that plaintiff had a full range of motion in his neck, shoulders, and hips. (R. 137.) While Dr. Mancheno observed injuries on both of plaintiff's arms, he found that plaintiff had a normal grip and fine manipulation function in his hands. (Id.) He also concluded that plaintiff's knee and ankle joints were normal. (Id.) With regard to plaintiff's back, Dr. Mancheno found tenderness from L-5 to S-1 and determined that flexion was 90 degrees, extension was 30 degrees, lateral bending was 20 degrees on each side, and rotation was 30 degrees on each side. (Id.) He found no deformity in the back region or paraspinal muscle spasm. (Id.) X-rays of plaintiff's lumbosacral spine and right knee were normal. (R. 139.) Dr. Mancheno concluded that plaintiff was status post injury to the right upper extremity, and he stated that he "rule[d] out arthritis of the lumbrosacral spine and knees." (R. 138.)

On February 25, 1988, Dr. Antonio Y. De Leon, a consulting physician, examined plaintiff. (R. 277.) Plaintiff reported a history of pain in his back, left arm, and elbow, as well as a history of hypertension and alcoholism. (Id.) Dr. De Leon found that plaintiff was "fairly developed and fairly nourished, in no acute distress, [and] walks with a normal gait." (R. 278.) He further observed that plaintiff was able to bend forward to 60 degrees, flexion and extension

engage in any other type of substantial gainful employment in the national economy. See 42 U.S.C. § 423(d)(2)(A). In determining whether an individual is disabled, the Commissioner is to consider both objective and subjective factors, including "objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain and disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience." Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted).

In order to establish disability under the Act, a claimant must prove that (1) he is unable to engage in substantial gainful activity by reason of a physical or mental impairment expected to result in death or that had lasted or could be expected to last for a continuous period of at least twelve months; and (2) the existence of such impairment was demonstrated by medically acceptable clinical and laboratory techniques. 42 U.S.C. §§ 423(d), 1382(a); see also Shin v. Apfel, 1998 WL 788780 at *5 (S.D.N.Y. November 12, 1998) (citing cases).

The SSA has promulgated a five step process for evaluating disability claims. See 20 C.F.R. § 404.920. The Second Circuit has characterized this procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful employment. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). The plaintiff has the burden of establishing disability on the first four steps of this analysis. On the fifth step, however, the burden shifts to the Commissioner to establish that plaintiff is able to perform work that exists in the national economy. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

The court's role in reviewing the decisions of the SSA is narrowly confined to assessing whether the Commissioner applied the correct legal standards in making his determination and whether that determination is supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Donato v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence is defined as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citation omitted). The Commissioner's findings and determination are supported by substantial evidence, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) ("'The court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'") (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

However, administrative decisions regarding claimants' eligibility for disability benefits are "surprisingly vulnerable to judicial review" due to the Commissioner's creation—and the courts' subsequent enforcement—of various procedural obligations to which ALJs must adhere. Molina v. Barnhart, No. 04 Civ. 3201, 2005 U.S. Dist. LEXIS 17981 at *21 (S.D.N.Y. Aug. 17, 2005). An ALJ's failure to adhere to any of these regulations constitutes legal error, permitting

reversal of the administrative decision. Id.; see also Toribio v. Barnhart, No. 02 Civ. 4929, 2003 U.S. Dist. LEXIS 10367 at *7 (S.D.N.Y. Jun. 28, 2003).

B. **Merits of Plaintiff's Claims**

1. **Failure to Adequately Consider Treating Physician's Opinion**

In the instant case, ALJ Vecchio undertook the prescribed sequential analysis and found that, while plaintiff had a severe impairment, he retained the RFC to perform a full range of light work during the period at issue. (R. 16.) According to SSA regulations, light work involves lifting up to 20 pounds at a time and frequent lifting and carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Light work also generally requires standing or walking for a total of 6 hours in an eight hour workday, with only intermittent sitting. See Social Security Ruling 83-10. The regulations also emphasize that light work occupations "require use of arms and hands to grasp and to hold and turn objects," but "generally do not require use of the fingers for fine activities to the extent required in much sedentary work." Id.

The ALJ reached his conclusion based on the findings of the state agency medical consultants, who determined that plaintiff had no exertional or non-exertional limitations. (Id.) In reaching this conclusion, the ALJ rejected the RFC assessment made by plaintiff's treating physician Dr. Villa Pastor. In her February 1989 evaluation, Dr. Villa Pastor concluded that plaintiff could only sit for 2 1/2 hours, stand for 1 hour, and walk for 1/2 hour during an 8 hour workday. (R. 291.) She also concluded that plaintiff could never carry more than ten pounds. (Id.) Moreover, She noted that plaintiff was incapable of using his feet to push and pull leg controls or bend, squat, crawl, climb, or reach. (Id.) The ALJ, however, rejected Dr. Villa Pastor's opinion because she allegedly "provided no clinical, laboratory, or x-ray evidence to

12

support [her] assessment, and, instead, based [her] assessment on an uncritical acceptance of subjective complaints reported by the claimant which are not otherwise documented in the record and which [were] not found to be entirely credible." (R. 15.)

ALJ Vecchio erred in rejecting the opinion of Dr. Villa Pastor, plaintiff's treating physician, on the grounds that it was not supported by medically acceptable data. The medical conclusion of a "treating physician" is "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Where the ALJ does not give the treating physician's opinion controlling weight, he is required to provide "good reasons" for this decision. Failure to do so is grounds for remand. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

Here, ALJ Vecchio inaccurately characterized Dr. Villa Pastor's evaluation of plaintiff's condition by concluding that it was not supported by medically acceptable data. (R. 15.) The court finds that the ALJ overlooked a significant amount of objective medical evidence on which Dr. Villa Pastor based her RFC assessment. The February 1989 evaluation itself notes that Dr. Villa Pastor ordered laboratory tests, which showed that plaintiff had elevated sedimentation rates in March 1987, December 1987, and August 1988 and that plaintiff had an RA latex factor of 120 dl. (R. 290.) Moreover, the record contains the results of several of these laboratory tests. (See R. 287-88, 314.) In addition to laboratory tests, Dr. Villa Pastor clearly indicated that she based her opinion on physical examinations of plaintiff, in which she found that plaintiff had tenderness in his back and lower extremities and she observed blood in or near plaintiff's rectal area. (R. 290.) A review of Dr. Villa Pastor's treatment notes indicate that she conducted

physical exams of plaintiff frequently between March 12, 1987 and May 22, 1989. (R. 167, 294-307.) In her treatment notes, Dr. Villa Pastor noted that she found his back to be tender on at least one occasion prior to completing her February 1989 report. (See R. 295.) During other examinations, she found plaintiff's abdomen to be tender and observed blood in or near plaintiff's rectal area. (R. 301-02.) Under SSA regulations, the laboratory test results and the clinical observations during numerous physical examinations constitute objective medical evidence. See 20 C.F.R.§ 404.1528(b)-(c); see also Kaplan v. Barnhart, No. 01 Civ. 8438, 2004 WL 528440, at *3 (E.D.N.Y. Feb. 24, 2004) (finding that laboratory results, observations, and consultation logs constitute objective medical evidence). Given that Dr. Villa Pastor's treatment notes and RFC assessment are, in fact, based on objective medical evidence, the court finds that the ALJ failed to provide "good reasons" for giving limited weight to the treating physician's opinion. Upon remand, the ALJ is directed to evaluate Dr. Villa Pastor's opinion and treatment notes, as well as all the laboratory tests ordered by her during the period at issue.

### 2. Failure to Determine Whether Dixon Presumption Applies

The Dixon Remedial Order set forth certain procedures to determine whether disability should be presumed due to the SSA's failure to locate a class member's files:

> If records cannot be located for any class member, ... certain rebuttable presumptions apply, which serve to reduce the number of plaintiffs whose claims must be readjudicated. A class member whose records cannot be located will be presumed to be disabled if he or she received a decision awarding disability benefits for any period of disability subsequent to the one that forms the basis of class membership, and (1) it is medically reasonable to presume that he or she was disabled as of the date of the prior denial, or (2) he or she was 55 years of age or older at the time of the denial. Conversely, there will be a rebuttable presumption that a class member is not disabled if (1) he or she received a denial or termination of benefits subsequent to the one that forms the basis of class membership; (2) he or she was employed for at least six months following the denial or termination;

14

> or (3) a claim was reviewed and denied pursuant to a related class action, Stieberger v. Sullivan, 792 F.Supp. 1376 (S.D.N.Y.1992).

54 F.3d at 1034-35 (citations omitted). The Remedial Order also provided that "[i]f a class member's claims file cannot be found and the presumptions [stated above] are inapplicable ... the class member will be required to submit evidence pertaining to his or her condition." Id. at 1035 (citations and internal quotation marks omitted). To aid the class member in reconstructing his or her file, the order further required that "[the] SSA shall also use its regular policies on evidence development to assist the class member in obtaining evidence relevant to the readjudication of his or her claim." Id. According to Dixon, this "reconstruction" procedure requires the SSA to assist in evidence development by interviewing the claimant whose records were destroyed and to request medical and employment records from the claimant's physicians and employers. Id. at 1036. The SSA's obligation when there is no presumption is minimal: "If SSA writes letters to hospitals and doctors requesting records and comes up empty, SSA has discharged its assistance obligation." Id. at 1037.

Here, plaintiff's records from his 1976 and 1981 applications apparently could not be located. (R. 79.) While plaintiff's 1985 and 1988 applications were denied, he received a favorable determination on his 1991 application. (Id.) According to the procedure set forth in the Dixon Remedial Order, plaintiff could receive a presumption of disability for the period associated with his 1976 and 1981 applications if it was medically reasonable to presume disability prior to the date that benefits were actually granted. 54 F.3d at 1034-35. However, the record shows that the Commissioner did not apply a presumption, either of disability or non-disability, due to insufficient data. (R. 78.) Instead, the Commissioner attempted to assist

15

plaintiff in reconstructing the record, but plaintiff apparently failed to provide treating sources for the time period at issue. (See R. 95, 97)

It is unclear from the record why there was insufficient data to apply the presumption of disability. It is possible that the Commissioner did not apply the presumption because the records associated with plaintiff's 1991 application were also missing and, thus, the Commissioner believed it would be unable to determine whether it was medically reasonable to presume prior disability. (See R. 79.) In fact, the record does not even include the decision associated with plaintiff's 1991 application.[5] Consequently, the court is unable to determine whether plaintiff's 1991 application alleges the same claims of disability as his prior applications. While the administrative record includes no information about the 1991 application, the court finds it perplexing that the SSA would have no knowledge of the reason it has been paying SSI benefits to plaintiff every month since September 4, 1991. If plaintiff's 1991 application sought benefits for the same disabilities alleged in his 1976 and 1981 applications, the Commissioner would be required under the Dixon Remedial Order to determine whether it is medically reasonable to presume that plaintiff had been disabled since the date of his 1976 application.

Given that it is unclear from the record why a presumption of disability was not applied to the period prior to September 4, 1991, the court concludes that the ALJ erred by failing to identify the disability for which plaintiff has received benefits since September 4, 1991 and by failing to analyze whether the presumption of disability should apply. See Fagan v. Barnhart,

---

[5] The court attempted to obtain a copy of the decision granting benefits to plaintiff based on his 1991 application. However, defendant's counsel informed the court that the decision could not be located.

16

No. 02 Civ. 8533, 2005 WL 427575 (S.D.N.Y. Feb. 23, 2005) (remanding, in part, because the Commissioner failed to determine whether plaintiff was entitled to a presumption of disability). Upon remand, the ALJ is directed to identify the disability for which plaintiff is currently receiving benefits. If the disability the same as the disability alleged in plaintiff's Dixon claims, the ALJ is directed to develop the record to determine whether it is medically reasonable to presume that plaintiff was also disabled prior to September 4, 1991.

## CONCLUSION

The court concludes that remand is appropriate because the ALJ failed to adequately consider the treating physician's opinion in reaching his determination of the plaintiff's residual functional capacity and because the ALJ failed to analyze whether a presumption of disability pursuant to the Dixon Remedial Order is applicable. Accordingly, defendant's motion for judgment on the pleadings is denied, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

_____
Allyne R. Ross
United States District Judge

Dated: May 2, 2006
Brooklyn, New York

SERVICE LIST:

*Pro Se Plaintiff:*
Walter Caraballo
258 Grand Street #3A
Brooklyn, NY 11211

*Counsel for Defendant:*
Kathleen Anne Mahoney
United States Attorneys Office
Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201